**In re CHEWNING & FREY SECURITY, INC., f/k/a McLaughlin–Frey Security, Inc., Debtor.**

No. 96–77872–CRM.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Aug. 9, 2005.

Tamara Miles Ogier, Ellenberg, Ogier & Rothschild, P.C., Atlanta, GA, for Debtor.

C. Brooks Thurmond, III, Atlanta, GA, Chapter 7 Trustee.

Leroy Culton, Office of the United States Trustee, Atlanta, GA, for U.S. Trustee.

## ORDER

C. RAY MULLINS, Bankruptcy Judge.

**THIS MATTER** is before the Court on the Trustee's Final Report (the "Final Report") (Doc. No. 170), filed by the Chapter 7 Trustee (the "Trustee"); the Application for Compensation to [*sic*] Special Counsel (the "Application for Compensation") (Doc. No. 174), filed by Ellenberg, Ogier & Rothschild ("Special Counsel"); and the Ellenberg, Ogier & Rothschild Objection to Trustee's Final Report and Contingent Amendment to Its Fee Application (the "Objection to Final Report and Amendment to Application") (Doc. No. 177), filed by Special Counsel. The United States Trustee (the "U.S. Trustee") filed its Response to Ellenberg, Ogier & Rothschild Objection to Trustee's Final Report, Etc. (the "U.S. Trustee's Response") (Doc. No. 181).

On January 27, 2005, a hearing was held on the Final Report, the Application for Compensation, and the Objection to Final Report and Amendment to Application, and the Court permitted the parties to file supplemental briefs. On February 2, 2005, Special Counsel filed its Post–Trial Brief Supporting the Ellenberg, Ogier & Rothschild Objection to Trustee's Final Report and Contingent Amendment to Its Fee Application ("Special Counsel's Supplemental Brief") (Doc. No. 182). On February 4, 2005, the Trustee filed the Brief in Support of Trustee's Final Report and Proposed Distribution (the "Trustee's Supplemental Brief") (Doc. No. 183).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), as well as Rule 1070–1 of the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

The issue before the Court is whether the administratively insolvent estate should pay Special Counsel's contingency fee in full pursuant to the contingent fee agreement, the Application to Employ Special Counsel, and the Application for Compensation, or whether the fee should be reduced by the requirement for *pro rata* distribution set forth in section 726(b) of the Bankruptcy Code. The Court holds that when Special Counsel seeks compensation at the time of the final distribution of an administratively insolvent estate, Special Counsel's contingency fee should be reduced to achieve a *pro rata* distribution in accordance with section 726.

## I. FACTS

Chewning & Frey Security, Inc. (the "Debtor"), formerly known as McLaughlin–Frey Security, Inc., filed a petition for relief under chapter 11 of the Bankruptcy Code on November 8, 1996. The Debtor

was represented by Ellenberg, Rothschild & Ogier in the main bankruptcy case. *See* Order granting Application of Debtor for Approval of Employment of Attorneys and Attorney's Rule 2014 Disclosure Statement (Doc. No. 12). On May 15, 1998, the chapter 11 case was converted to a case under chapter 7 pursuant to the Debtor's request. *See* Notice of Conversion to a Case Under Chapter 7 (Doc. No. 93). Mr. C. Brooks Thurmond was appointed as Trustee on May 18, 1998.

On September 26, 2001, the Trustee filed the Application to Employ Special Counsel (Doc. No. 144). The Trustee sought to employ counsel for the Debtor in the main bankruptcy case as Special Counsel to represent the estate in *Chewning & Frey Security, Inc., v. Pearce Financial Group, Inc.,* Adversary Proceeding No. 98–6022 (the "Pearce Adversary Proceeding"), commenced by the Debtor against the Pearce Financial Group, Inc. ("Pearce") prior to conversion.[1] According to paragraph 5 of the Application to Employ Special Counsel,

> Ellenberg Ogier & Rothschild, P.C., have agreed to provide the aforesaid services to this estate *on a contingency fee basis of one-third (1/3) of all sums collected on behalf of the estate,* plus reimbursement for out-of-pocket expenses. The out of pocket expenses to be reimbursed include those incurred by counsel prior to this employment in the prosecution of this action prior to conversion including, but not limited to, the costs of a deposition of a representative of the Defendant taken in Florida, said costs not to exceed $550.00.

Application to Employ Special Counsel, ¶ 5 (emphasis added). On October 10, 2001, the Court entered the Order approving the Application to Employ Special Counsel (Doc. No. 145). As noted in the Order, "payment of compensation as set forth in Trustee's Application is subject to allowance by the Court upon application, notice and hearing thereon." Order approving Application to Employ Special Counsel, ¶ 3.

On behalf of the Trustee, Special Counsel filed the Application to Compromise (Doc. No. 159) in the main bankruptcy case[2] on October 7, 2003. The Trustee proposed to compromise the estate's claims against Pearce upon the terms and conditions enumerated in the Agreement to Compromise with Pearce Financial Group, Inc., attached to the Application to Compromise. On November 18, 2003, the Court entered the Order Approving Compromise (Doc. No. 163), which settled the estate's claim against Pearce, as well as any claims by Pearce against the estate, for the total sum of $37,636.00. The monies were paid by Pearce to the estate, and the Pearce Adversary Proceeding was dismissed with prejudice on April 26, 2004.

On October 29, 2004, the Trustee filed the Final Report, which shows that the estate is administratively insolvent and has sufficient funds to pay only a percentage of the chapter 7 administrative expenses. The chapter 7 administrative claims totaling $56,561.10 exceed the funds in the amount of $48,286.47 remaining to be distributed. In conjunction with the Final Report, the chapter 7 administrative claim-

---

**1.** This adversary proceeding was commenced by the filing of the Complaint on January 13, 1998. On October 5, 2001, the Trustee was substituted for the Debtor as the real party in interest in the adversary proceeding.

**2.** A copy of the application was also filed in the adversary proceeding.

ants, including the Trustee, the Attorney for the Trustee, the Trustee's Accountant, and Special Counsel, filed applications for compensation. Special Counsel filed the Application for Compensation requesting $13,614.49, one-third of the recovery from the Pearce Adversary Proceeding in the amount of $12,545.33 plus reimbursement of expenses in the amount of $1,069.16, pursuant to the Application to Employ Special Counsel. According to the Application for Compensation, this contingency fee is less than the Special Counsel's $24,147.00 fee based on actual time billed.

Seeking the entire contingency fee of $12,545.33, Special Counsel objected to the Trustee's Final Report. Special Counsel argues that the estate should pay the total amount of the contingency fee out of the settlement proceeds before the remainder of the settlement is applied *pro rata* to the chapter 7 administrative expenses. In the alternative, should the chapter 7 administrative claimants share a *pro rata* distribution, Special Counsel prays for the allowance of a chapter 7 priority expense in the amount of $16,863.65 to receive payment of fees and expenses in the amount of $13,614.49. In response, the Trustee asserts that Special Counsel's contingent fee is a chapter 7 administrative expense which should be paid *pro rata* at a dividend of approximately 85.37%. Similarly, the U.S. Trustee recommends that Special Counsel's claim for legal fees be paid in accordance with the *pro rata* distribution of estate funds pursuant to section 726. To date, Special Counsel has yet to receive any compensation in connection with its employment on behalf of the Trustee.

## II. ARGUMENTS

The Trustee's proposed distribution prorates the funds received and remaining to be distributed among chapter 7 administrative expenses, including Special Counsel's contingent fee. Special Counsel argues that it is entitled to receive compensation in full from the settlement pursuant to general principles of contract law, Georgia law, and equity. Relying on the Application to Employ Special Counsel and the order approving said application, Special Counsel contends that it agreed to provide services to the estate on a contingency fee basis of one third of all sums collected, not as an " 'allowed expense' before discount for *pro rata* sharing." Special Counsel's Supplemental Brief, pp. 3. Special Counsel claims that the contingency fee "comes off the top" of the recovery. Transcript, pp. 10, lines 18–19. Acknowledging that it assumed the risk of the contingency fee arrangement, Special Counsel asserts that it "did not take the further risk that it would donate its work twice: once if the value of its work exceeded a third of the recovery; and then again, from [Special Counsel's] third, if the other professionals were not completely paid from the estate's two-thirds." Objection to Final Report and Amendment to Application, pp. 3. Since the Trustee reasons that the contingent fee should be reduced pursuant to the distribution scheme articulated in section 726, Special Counsel alleges that the Trustee's interpretation of the fee arrangement demonstrates that there was "no meeting of the minds" when the parties entered into the employment contract, or, perhaps, that there was a frustration of purpose of the initial employment contract. Consequently, Special Counsel petitions the Court to award reasonable compensation pursuant to section 330. In the alternative, Special Counsel contends that its services substantially benefitted the estate. In fact, a signifi-

cant portion of the funds remaining to be distributed were brought into the estate from the settlement of the Pearce Adversary Proceeding. Special Counsel further argues that the Georgia Attorney's Lien Statute, section 15–19–14 of the Official Code of Georgia, grants Special Counsel a lien over all settlement funds to collect its fee. Objection to Final Report and Amendment to Application, pp. 3–4; Special Counsel's Supplemental Brief, pp. 3. However, Special Counsel offers little support for this assertion. Special Counsel also urges the Court to consider the equities of the situation, including the time expended, the difficulty of the matter, the result obtained, and the amount of the estate's recovery.

The Trustee contends that when an estate is administratively insolvent, the professionals he employs are required by section 726(b) to suffer a *pro rata* diminution of their anticipated compensation. The Trustee observes that none of the professionals "agree" to take a reduced fee, but all are subject to the mandate promulgated in section 726. The Trustee argues that Special Counsel's contingent fee is the amount of its allowed chapter 7 administrative claim, which should be prorated accordingly. In addition, the Trustee maintains that the Georgia Attorney's Lien Statute does not apply to the post-petition employment of professionals by the Trustee, as the automatic stay of section 362(a) bars any act to create, perfect, or enforce a lien against property of the estate.

Supporting the Trustee's position, the U.S. Trustee argues that the language of section 726 is clear and unambiguous, and the statute should therefore be applied to Special Counsel's contingent fee. The U.S. Trustee asserts that similarly situated claimants must be treated in the same manner; Special Counsel is not entitled to special status. The U.S. Trustee also disputes the post-petition creation of the purported attorney's lien.

## III. ANALYSIS

■■■ As a professional person employed by the trustee pursuant to section 327, the compensation of special counsel is governed by section 330. Section 330(a) provides that the court may award reasonable compensation to a professional employed under section 327 for actual, necessary services rendered by the professional and reimbursement of actual, necessary expenses. If the court awards compensation or reimbursement under section 330(a), the amount of such compensation or reimbursement is entitled to priority status as an administrative expense under section 503(b)(2). Administrative expenses allowed under section 503(b) enjoy first priority in accordance with section 507(a)(1). Moreover, section 726(a) provides that property of the estate shall be distributed first in payment of claims of the kind specified in, and in the order specified in, section 507. In addition, section 726(b) mandates that payment on claims of a kind specified in paragraph (1) of section 507(a) shall be made *pro rata* among claims of the kind specified in each such particular paragraph. In the instant case, Special Counsel is a professional person employed pursuant to section 327, as well as the Order approving the Application to Employ Special Counsel and the contingent fee agreement with the Trustee. Once the Court awards compensation pursuant to section 330, Special Counsel's compensation claim will be a chapter 7 administrative expense, which should be paid in accordance with the priority schemes of sections 507 and 726.

■■■ Special Counsel argues that the Court has discretion to award reasonable

compensation pursuant to section 330. Section 330(a) provides:

(1) After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court *may* award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

(2) The court *may*, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) (A) [*sic*] In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the

problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4) (A) Except as provided in subparagraph (B), the court *shall not* allow compensation for—

(i) unnecessary duplication of services; or (ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

. . . .

11 U.S.C. § 330 (emphasis added). Special Counsel correctly asserts that the Court has jurisdiction over and considerable discretion in the awarding of fees. 11 U.S.C. §§ 329, 330, 331; *Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1404 (11th Cir.1997); *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 878 (11th Cir.1990). Relying on the Objection to Final Report and Amendment to Application, Special Counsel seeks approval of the entire contingent fee in the amount of $12,545.33 plus reimbursement of expenses in the amount of $1,069.16. In the alternative, should Special Counsel share a *pro rata* distribution with the chapter 7 administrative claimants, Special Counsel requests the allowance of a chapter 7 priority expense in the amount of $15,794.49, plus reimbursement of expenses in the amount of $1,069.16, to receive payment in the amount of $13,614.49.

■ Section 330 provides for the review of fees, after services are provided,

under a reasonableness standard. Section 330 is subject to section 328. 11 U.S.C. § 330; *In re Westbrooks,* 202 B.R. 520, 522 (Bankr.N.D.Ala.1996) ("Section 330 provides the framework for review while Section 328 provides the standard of review."). Section 328 permits the Trustee to employ professionals pursuant to contingency fee agreements:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a). Thus, under section 328, a professional may obtain court approval of the fee arrangement prior to performing the contemplated services, and the court may allow different compensation after the representation has concluded only if the terms and conditions of the fee arrangement are improvident in light of unanticipated developments. 11 U.S.C. § 328(a). "Without such a finding, the prior fee agreement should not be disturbed. Section 330's reasonableness standard does not supplant Section 328(a) and give the judge free reign to void a previously authorized employment agreement for a percentage fee." *Unsecured*

*Creditors Comm. v. Webb & Daniel,* 204 B.R. 830, 834 (M.D.Ga.1997) (Fitzpatrick, J.) (citing *In re Westbrooks,* 202 B.R. 520, 522 (Bankr.N.D.Ala.1996)).

■ Special Counsel is employed by the Trustee to represent the estate in the Pearce Adversary Proceeding on a contingency fee basis. Neither the Application to Employ Special Counsel nor the Order granting said application specifies whether the fee provision is governed by section 328 or section 330. The Order approving the Application to Employ Special Counsel states "payment of compensation as set forth in Trustee's Application is subject to allowance by the Court upon application, notice and hearing thereon." Order approving Application to Employ Special Counsel, pp. 1. Thus, it appears that compensation issues are to be addressed the time of the filing of the application for compensation pursuant to Rule 2016(a) and sections 330 and/or 331, and the Court reserved the right to approve the fees. The Court concludes that while it may have approved the employment of Special Counsel, it did not approve the contingency fee pursuant to section 328. Further, the Trustee did not request a retention order under section 328 to fix the terms and conditions of the fee agreement. Robert J. Landry, III, and James R. Higdon, *A Primer on 11 U.S.C. [§ ] 328(a) and Its Use in Alternative Billing Methods in Bankruptcy,* 50 Mercer L.Rev. 537, 541 (1999). Moreover, the Trustee and Special Counsel have not argued that the Order granting the Application to Employ establishes the fee arrangement pursuant to section 328. Since the Trustee and Special Counsel have made no mention of section 328, the Court must review Special Counsel's fees under a reasonableness standard pursuant to section 330(a). *Nischwitz v. Miskovic (In re Airspect Air, Inc.),* 385

F.3d 915, 922 (6th Cir.2004) ("We hold that whether a court 'pre-approves' a fee arrangement under § 328 should be judged by the totality of the circumstances, looking at both the application and the bankruptcy court's order. Factors in the determination may include whether the debtor's motion for appointment specifically requested fee pre-approval, whether the court's order assessed the reasonableness of the fee, and whether either the order or the motion expressly invoked § 328."); *In re Circle K Corp.*, 279 F.3d 669, 671 (9th Cir.2002) ("We hold that unless a professional's retention application unambiguously specifies that it seeks approval under § 328, it is subject to review under § 330."); *Zolfo, Cooper & Co. v. Sunbeam–Oster Co., Inc.*, 50 F.3d 253, 262 (3d Cir. 1995) ("If the order does not expressly and unambiguously state specific terms and conditions (e.g., specific hourly rates or contingency fee arrangements) that are being approved pursuant to the first sentence of section 328(a), then the terms and conditions are merely those that apply in the absence of specific agreement. That leaves the court free to apply lodestar rates unfettered by the stricture of the second sentence of section 328(a).") (quoting *In re C & P Auto Transport, Inc.*, 94 B.R. 682, 685 n. 4 (Bankr.E.D.Cal.1988)). *But see Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862 (5th Cir. 1997) (holding that the professional had been employed pursuant to section 328 even though section 328 was not specified in the application to employ and the order stated that "the Court retains the right to consider and approve the reasonableness and amount of [professional's] fees on both an interim and final basis.").

Section 330 authorizes the Court to award reasonable compensation for actual, necessary services rendered by professionals. The Eleventh Circuit has ruled that compensation under section 330 is determined using the "lodestar method." *Grant*, 908 F.2d at 877–79; *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988). The lodestar method is based on multiplying the reasonable number of hours expended by counsel on reasonable services by a reasonable hourly rate. *Id.; In re Port Royal Land & Timber Co.*, 105 B.R. 72, 77 (Bankr.S.D.Ala.1989). This analysis requires consideration of the twelve factors first enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), made applicable to bankruptcy in *In re First Colonial Corp. of America*, 544 F.2d 1291, 1298–99 (5th Cir. 1977), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).[3] *Grant*, 908 F.2d at 879; *Norman*, 836 F.2d at 1299; *In re Health Science Products, Inc.*, 191 B.R. 895, 910 n. 20 (Bankr.N.D.Ala.1995). Additionally, the court may not allow compensation for services that were unnecessarily duplicative, not reasonably likely to benefit the debtor's estate, or not neces-

---

**3.** The twelve factors articulated in *Johnson* are: (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

sary to the administration of the estate. 11 U.S.C. § 330(a)(4). The court must explain its determination of the fee award, including its consideration of the *Johnson* factors. *Speights & Runyan v. Celotex Corp. (In re Celotex Corp.)*, 227 F.3d 1336, 1341 (11th Cir.2000).

 If Special Counsel is entitled to a contingent fee, Special Counsel would receive $12,545.33, one-third of the recovery from the settlement of the Pearce Adversary Proceeding in the amount of $37,636.00. Special Counsel provides detailed documentation of the hours expended, the services provided, and the customary billing rates during the period for which compensation is sought. These chronological billing statements for each professional, as well as a listing of expenses, are attached to the Application as Exhibit A. The Court has reviewed the time entries, which indicate that approximately 107 hours of services of attorneys and paralegals would have generated $24,147.00 if fees were calculated based upon an hourly rate. Although determining whether Special Counsel is entitled to the contingency fee, the Court notes that the billing rates[4] charged by Special Counsel are reasonable in light of the customary fees charged by attorneys with comparable experience and skills practicing in the Northern District of Georgia,

Atlanta Division.[5] The Court finds that Special Counsel's billing rates are reasonable and conform to the prevailing market rate. Moreover, the time and effort spent on the Pearce Adversary Proceeding was reasonable and necessary,[6] and ultimately resulted in a substantial benefit to the estate. In fact, as noted by Special Counsel, "[Special Counsel] did good work. Its efforts brought into the estate most of the money that will pay all professionals." Objection to Final Report and Amendment to Application, pp. 3–4. Finally, the hours expended by Special Counsel do not appear to include excessive, redundant, or otherwise unnecessary hours.[7] Accordingly, if Special Counsel's fees were calculated using the lodestar method based upon an hourly billing rate, compensation in the amount of $24,147.00 would appear to be reasonable. Instead, Special Counsel seeks the lesser contingency fee of $12,545.33. The Court finds that the contingency fee requested by Special Counsel is reasonable and satisfies the standards articulated in section 330, as well as in *Johnson, Grant,* and *Norman.* Pursuant to section 330, the Order approving the Application to Employ Special Counsel, and the contingent fee agreement, the Court finds that Special Counsel's fees and expenses are allowed in the total amount of $13,614.49.

 In the Objection to Final Report and Amendment to Application, Spe-

---

4. The billing rate for the paralegal is $110.00 per hour. The billing rate for the attorneys ranges from $185.00 to $250.00 per hour.

5. Although the party seeking attorney's fees should present "satisfactory evidence that the requested rate is in line with prevailing market rates," *Norman,* 836 F.2d at 1299, "[a] court, however, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgement either with or without the aid of witnesses as to value." *Loranger v. Stierheim,* 10 F.3d 776,

781 (11th Cir.1994) (quoting *Norman,* 836 F.2d at 1303).

6. The Court is very familiar with the Pearce Adversary Proceeding and the difficulty of the litigation. The Court recognizes that Special Counsel exerted a significant amount of time and effort in resolving this matter.

7. It appears that Special Counsel has excluded time spent in the performance of duties as Debtor's Counsel.

cial Counsel argues that if its compensation is to be reduced to achieve a *pro rata* distribution, it should receive fees in the amount of $15,794.49. The Court does not agree with Special Counsel's reasoning in this regard. The award of fees and expenses must first be determined upon consideration of the Application for Employment, the Application for Compensation (and any amendments thereto), and the fee agreement. Special Counsel is entitled to a contingent fee of one-third of all sums collected, the amount of $13,614.49, and no more. When the Court awards such compensation and/or reimbursement, this is the amount of the claim which is entitled to priority status as a chapter 7 administrative expense pursuant to sections 503(b)(2) and 507(a)(1). It is not until after the Court awards compensation and/or reimbursement that the Court will decide whether this claim will be paid *pro rata*. However, if Special Counsel believes it is entitled to an increased fee, Special Counsel should have requested a fee enhancement.[8] *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (hereinafter *"Delaware I"*); *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley*

*v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Any fee enhancement award is within the sole discretion of the bankruptcy court. *See In re UNR Indus., Inc.,* 986 F.2d 207, 208 (7th Cir. 1993). The burden of proving that enhancement is necessary is on the fee applicant. *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933.

■■■ Fees, specifically lodestar rates, may be enhanced based on risk of non-recovery, excellent or exceptional results, or delay in receipt of payment. *Grant,* 908 F.2d at 880 (citing *Norman,* 836 F.2d at 1302). In *Norman,* the Eleventh Circuit held that if the fee is contingent, enhancement may be appropriate if there is a risk of non-recovery and "such enhancement is necessary to assure the availability of counsel."[9] 836 F.2d at 1302. The Supreme Court has yet to address fee enhancements in bankruptcy matters. As one bankruptcy court has astutely observed, "[i]t remains open whether a contingency enhancement in bankruptcy cases may be awarded where the risk of non-payment is due to prospective lack of funds in the estate (contrasted with risk of outcome in the *Burlington* sense)." *In re First Am. Health Care of Ga., Inc.,* 212

---

8. As noted in *In re Blue Coal Corporation,* the term "enhancement" may be used interchangeably with other terms used to identify additional compensation over that agreed upon or provided for under the original employment. 206 B.R. 721, 724 n. 1 (Bankr. M.D.Pa.1997). Other terms include upward adjustment, bonus, premium, reward, and augmentation. *Id.* (citing cases).

9. Generally, enhancement for contingency is not permitted under fee-shifting statutes which provide for payment of a reasonable fee to a prevailing party. *City of Burlington v. Dague,* 505 U.S. 557, 567, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *In re First Am. Health Care of Ga., Inc.,* 212 B.R. 408, 414 (Bankr.

S.D.Ga.1997) (Davis, J.). *See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (hereinafter *"Delaware II "*). Bankruptcy cases do not quite fit within the fee-shifting case mold. *In re Chary,* 201 B.R. 783, 788 (Bankr.W.D.Tenn.1996); *Burgess v. Klenske (In re Manoa Fin. Co.),* 853 F.2d 687, 690–91 (9th Cir.1988). Nonetheless, it appears that many courts follow the fee shifting precedents in bankruptcy cases. Brittany E. Powell, *Eliminating Fee Enhancements: Encouraging Quality Representation in Bankruptcy While Maximizing the Value to the Estate,* 20 Bankr.Dev. J. 207, 209 (2003).

B.R. 408, 414 n. 5 (Bankr.S.D.Ga.1997) (Davis, J.). Nonetheless, enhancement is reserved only for "rare" and "exceptional" cases. *Delaware I,* 478 U.S. at 564–65, 106 S.Ct. 3088. Accordingly, the most significant factor in adjusting fees is the results obtained, but there must be "specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rules [*sic*] claimed." *Grant,* 908 F.2d at 880 (quoting *Norman,* 836 F.2d at 1302); *In re Gencor Indus.,* 286 B.R. 170, 178 (Bankr.M.D.Fla.2002). Additional criteria have been considered by courts including:

(1) An outstanding result for creditors, *In re Southern Merchandise Distributors, Inc.,* 117 B.R. 725, 727 (Bankr.S.D.Fla.1990);

(2) An extraordinary effort, *In re Aminex Corp.,* 15 B.R. 356, 364 (Bankr.S.D.N.Y.1981);

(3) The full payment of all creditors, *In re D.W.G.K. Restaurants,* 106 B.R. 194, 197 (Bankr.S.D.Cal.1989);

(4) The expedience with which the professional performed its duties, *In re Summit Communities of Florida, Inc.,* 84 B.R. 863, 871 (Bankr.S.D.Fla.1988);

(5) The difficulty in finding counsel in the local or other relevant market, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987);

(6) The delay in receiving fees from the time the services were performed, *In re White Motor Credit Corp.,* 50 B.R. 885 (Bankr.N.D.Ohio 1985);

(7) The initial risk or contingency of nonpayment of any legal fees, *In re Southern Merchandise Distributors, Inc.,* 117 B.R. 725, 728 (Bankr.S.D.Fla.1990);

(8) The existence of factors not initially considered in calculating the professional's standard fee, *In re White Motor Credit Corp.,* 50 B.R. 885, 889 (Bankr.N.D.Ohio 1985);

(9) The *nunc pro tunc* adjustment of original retention orders to avoid inequity, *In re Churchfield Management & Invest. Corp.,* 98 B.R. 838, 854 (Bankr.N.D.Ill.1989);

(10) The ratio of the bonus request to the time spent, *In re Penn–Dixie Industries, Inc.,* 18 B.R. 834, 837 (Bankr.S.D.N.Y.1982); and

(11) Whether the entire legal fee, including the bonus, appears to be excessive as that term is used in the American Bar Association Model Code of Professional Responsibility, Disciplinary Rule 2–106(B), *In re Southern Merchandise Distributors, Inc.,* 117 B.R. 725, 726 (Bankr.S.D.Fla.1990).

*In re Blue Coal Corp.,* 206 B.R. 721, 723–24 (Bankr.M.D.Pa.1997). However, there is a strong presumption that the lodestar amount represents reasonable compensation. *Id.; Blum,* 465 U.S. at 897, 104 S.Ct. 1541. *See also UNR Indus., Inc.,* 986 F.2d at 211; *Burgess v. Klenske (In re Manoa Fin. Co.),* 853 F.2d 687, 691 (9th Cir.1988); *Grant,* 908 F.2d at 880–81; *First Am. Health Care of Ga., Inc.,* 212 B.R. at 417–18.

■ Although Special Counsel did not specifically request enhancement and there was no agreement for enhanced compensation based on the risk of non-payment, the Court finds that it is not warranted. In reviewing the adversary proceeding, the

Court acknowledges that the litigation was difficult and frustrating at times, but finds nothing remarkable nor any unique issues or unforeseen obstacles. Further, Special Counsel did not offer any factors which would warrant an enhancement in the fee. *See In re Taylor,* 242 B.R. 549, 553 (Bankr.S.D.Ga.1999) (Davis, J.). Special Counsel failed to demonstrate that such an adjustment is necessary. The Court therefore finds that enhancement is not appropriate, and the total amount of Special Counsel's claim is $13,614.49.

■■■ The Court must now determine whether the claim should be reduced by the requirement for *pro rata* distribution set forth in section 726(b) of the Bankruptcy Code. Although Special Counsel requests that the claim be paid in full before the final distribution, the Court cannot ignore section 726, especially when the Application for Compensation is filed contemporaneously with the Final Report indicating that the estate is administratively insolvent. The Court's discretion, if any, is limited by section 726. "Allowance of discretion in certain sections, §§ 330 and 331, does not mandate discretion in another section, § 726." *Specker Motor Sales Co. v. Eisen,* 300 B.R. 687, 691 (W.D.Mich.2003), *aff'd,* 393 F.3d 659 (6th Cir.2004). So while the Court may exercise discretion in determining the award of compensation, the Court is bound by the language of section 726(b) when actually awarding compensation, which is a chapter 7 administrative expense.

■■■ Pursuant to section 726(b), if the estate is administratively insolvent, chapter 7 administrative claimants should receive a *pro rata* distribution. The statute directs that "[p]ayment on claims of a kind specified in paragraph (1) ... of subsection (a) of this section, shall be made pro rata...." 11 U.S.C. § 726(b). Accordingly, where the assets of the estate are insufficient to fully pay claimants holding administrative expenses allowed pursuant to section 503(b) and specified in section 507, the claims must be paid *pro rata* and the funds should be distributed to each claimant equally.[10] *In re Florida W. Gateway,* 180 B.R. 299, 302 (Bankr.S.D.Fla. 1995); *In re Nat'l Buy–Rite, Inc.,* 10 B.R. 380, 381 (Bankr.N.D.Ga.1981) (Robinson, J.). The Court must follow the statutory priority scheme codified by Congress in sections 364, 503, 507, 546, and 726 of the Bankruptcy Code. *See, e.g., In re IML Freight, Inc.,* 52 B.R. 124, 137 (Bankr. D.Utah 1985) ("Priorities under the Bankruptcy Code are a creature of statute."). By clearly and specifically articulating priorities, Congress provided a mandate for the judiciary, thereby preventing the exercise of discretion. The statutory language is plain and unambiguous, and therefore the Court need not consider the legislative history. *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (citing *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)); *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Nonetheless, the language is consistent with the legislature's intent noted in House Report No. 95–595, as well as with prior law governing priorities set forth in section 64a(1) of the former Bankruptcy Act. H. Rept. to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 383,

---

**10.** Of course, if the case has been converted to chapter 7, claims allowed under section 503(b) incurred in chapter 7 are to be paid before similar claims incurred in other chapters. 11 U.S.C. § 726.

384, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6339–40. Congress expressly intended to treat all administrative claims equally. *In re Vernon Sand & Gravel, Inc.*, 109 B.R. 255, 257 (Bankr.N.D.Ohio 1989); *Specker Motor Sales Co.*, 300 B.R. at 691. Furthermore, section 726(b) embodies the Bankruptcy Code's fundamental goal of the equitable and consistent treatment of similarly situated creditors. *See Specker Motor Sales Co.*, 300 B.R. at 691; *In re Interstate Motor Freight Sys. IMFS, Inc.*, 71 B.R. 741, 744 (Bankr.W.D.Mich. 1987) ("An expression of this policy is found at 11 U.S.C. § 726(b) which provides in essence that all claimants, including administrative claimants, whose claims accrued in the same chapter shall be reimbursed pro rata."). Thus, it appears that, in accordance with section 726, Special Counsel's claim should be paid *pro rata*.

 Focusing on the Application to Employ, the contingent fee contract, and Georgia law regarding attorney's fees, Special Counsel avoids addressing the language of section 726, arguing that section 330 governs the issue before the Court.[11] Special Counsel asks that the Court consider the equities of the situation, including the time expended, the difficulty of the matter, the result obtained, and the amount of the estate's recovery, when awarding compensation. The Court reminds Special Counsel that it has considered these factors when determining the amount of compensation to be awarded, and thus Special Counsel's claim. *See* 11 U.S.C. § 330(a)(2). Regrettably, the Court cannot look to equity when determining how much of that compensation

Special Counsel will actually receive from the final distribution. Because congressional intent is clearly manifested, "[b]ankruptcy courts are not free to rearrange Congress' priorities for the treatment of creditors based on equitable grounds, except by application of § 510 to the claim of a particular creditor." *In re Printcrafters, Inc.*, 208 B.R. 968, 973 (Bankr.D.Colo.1997) *rev'd on other grounds, Weinman, Cohen & Niebrugge, P.C. v. Peters (In re Printcrafters, Inc.)*, 233 B.R. 113, 118 (D.Colo. 1999) (quoting *United States v. Noland*, 517 U.S. 535, 536, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996)). "Therefore, the Court should refrain from inserting priorities into the Code not intended by Congress." *Specker Motor Sales Co.*, 300 B.R. at 691. In addition, special treatment of one creditor's claim would be tantamount to creating a superpriority, elevating that claimant's status above other creditors. *Id.* The Court cannot discriminate among creditors; to do so would contravene a fundamental goal of the Bankruptcy Code. *Id.* ("The theme of the Bankruptcy Act is 'equality of distribution,' and if one claimant is to be preferred over others, the purpose should be clear from the statute.") (quoting *Nathanson v. NLRB*, 344 U.S. 25, 29, 73 S.Ct. 80, 97 L.Ed. 23 (1952) (internal citation omitted)). To exercise such discretion would also violate the language of section 726. The statutory priority scheme is mandatory; Congress did not authorize the courts to exercise discretion. "This Court is mindful that the Bankruptcy Code controls the Court's equitable discretion and that it must not 'use equity to contradict statutory or common law in or-

---

11. Special Counsel admits that "[t]he award under 11 U.S.C. § 330 is distributed under 11 U.S.C. § 726, so the award will be prorated unless all allowed expenses of equal priority are paid in full," but contends that it did not

agree that compensation would be prorated pursuant to section 726. Supplemental Response, pp. 2. Special Counsel asserts that this dispute concerns only section 330; the Court disagrees.

der to reach what the court feels is a fairer result.'" *Tarbox v. United States Trustee for the N. Dist. of Tex. (In re Reed)*, 312 B.R. 832, 837 (N.D.Tex.2004) (quoting *In re Offshore Diving & Salvaging, Inc.*, 1999 U.S. Dist. LEXIS 16664, 1999 WL 961763, *2 (E.D.La. Oct.20, 1999)). *See also In re Wilson–Seafresh, Inc.*, 263 B.R. 624, 632 (Bankr.N.D.Fla.2001) ("The priority scheme set forth in the Bankruptcy Code must be applied regardless of the fault of the professionals or the equities of the situation."). When such authority is granted, Congress explicitly states that it is so in the language of the provision (*e.g.*, shall v. may). The equitable powers granted pursuant to section 105(a) must also be "exercised in a manner that is consistent with the Bankruptcy Code." *Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt.)*, 4 F.3d 1329, 1334 (5th Cir.1993). Therefore, the Court cannot exercise discretion when approving the Trustee's final distribution, including the reduction in Special Counsel's claim, in accordance section 726.

▮▮▮ Alternatively, Special Counsel contends that its resolution of the Pearce Adversary Proceeding substantially benefitted the estate, and thus it should be paid before the estate receives the benefit. Special Counsel further postulates that its efforts achieved the most significant contribution to the estate, and it should be rewarded from the proceeds thereof. Once again referring to principles of equity, Special Counsel's argument is analogous to the common fund doctrine, an exception to the "American Rule" that each party bears its own legal fees and expenses. First recognized by the Supreme Court in *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1881) and adopted by Georgia caselaw,[12] the doctrine holds that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). Thus, the party who labors to create, preserve, protect, or increase a fund receives compensation for its efforts directly from the fund, thereby spreading the cost of litigation proportionately among all beneficiaries of such litigation. *In re Coron, Inc.*, 161 B.R. 449, 451 (Bankr.N.D.Ill.1993). "This is an equitable doctrine, and is usually justified on the ground that it prevents unjust enrichment of the non-litigants, who have taken a free ride on the trailblazer's efforts." *Matter of Fesco Plastics Corp.*, 996 F.2d 152, 157 (7th Cir.1993) (citations omitted). Essentially, Special Counsel believes that since the Trustee and all of the Trustee's professionals have benefitted from the litigation, they should be required to share the expenses of the litigation by allowing payment to Special Counsel directly from the settlement. In bankruptcy, however, the purpose and function of counsel for the trustee is to benefit the estate. In fact, all administrative claimants assist the debtor in maintaining or augmenting the size of the estate, thereby increasing distribution to creditors. If each of these parties are entitled to receive payment directly from the "fund" or "benefit" they had a duty to create, preserve, protect, or increase, the distribution scheme would be disrupted.

---

12. *See, e.g., State v. Private Truck Council, Inc.*, 258 Ga. 531, 534–35, 371 S.E.2d 378, 381 (1988); *Ewing v. First Nat'l Bank of Atlanta*, 209 Ga. 932, 933–34, 76 S.E.2d 791, 793 (1953); *Fowler v. Smith*, 230 Ga.App. 817, 822, 498 S.E.2d 130, 134 (Ga.Ct.App. 1998).

*Coron, Inc.,* 161 B.R. at 453. Moreover, to award fees to a trustee or trustee's counsel based upon the common fund doctrine would violate the Bankruptcy Code, which explicitly allows fees only under certain circumstances and, by implication, denies fees in other instances. *In re De Lancey,* 106 B.R. 363, 366 (Bankr.S.D.N.Y.1989) (citing *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 968–9, 99 L.Ed.2d 169, 179 (1988)). "There is no authority to pay counsel first and thereby spread the costs of litigation based on the Court's view of fairness, because the Bankruptcy Code's distribution scheme will achieve the result deemed by Congress to be fair." *Coron, Inc.,* 161 B.R. at 453. Thus, the common fund doctrine contravenes the purpose and spirit of the Bankruptcy Code, and is inconsistent with statutory distribution scheme articulated therein. *Id.*

■ Special Counsel also argues that it did not "agree" to the reduction of its claim. Nonetheless, Special Counsel should understand that it requested compensation when the Trustee's Final Report was filed. At this time, the Court cannot ignore the fact that the estate is administratively insolvent, nor can the Court disregard section 726. Though the Bankruptcy Code provides little guidance as to when administrative expenses should be paid, the timing here—of the filing of the application for compensation, the payment

of compensation, and the final distribution—is of particular significance. *Nat'l Buy–Rite, Inc.,* 10 B.R. at 381. It is possible that Special Counsel would have received the contingency fee in its entirety if an application for interim compensation [13] had been filed at an earlier date, perhaps with the Application to Compromise the Pearce Adversary, when it was not known that the estate was administratively insolvent. However, pursuant to sections 105, 330, and 331, the Court has discretion to order the disgorgement of these fees upon discovering that the estate is administratively insolvent. *United States v. Schottenstein, Zox & Dunn (In re Unitcast, Inc.),* 219 B.R. 741, 753 (6th Cir. BAP 1998). Several courts have held that professional fees may be disgorged to achieve a *pro rata* distribution in accordance with section 726(b). *Id.; In re Chute,* 235 B.R. 700, 701–02 (Bankr.D.Mass.1999); *In re Anolik,* 207 B.R. 34, 39 (Bankr.D.Mass. 1997); *Shaia v. Durrette, Irvin, Lemons & Bradshaw, P.C. et al (In re Metro. Elec. Supply Corp.),* 185 B.R. 505, 510 (Bankr. E.D.Va.1995); *In re Kingston Turf Farms, Inc.,* 176 B.R. 308, 310 (Bankr. D.R.I.1995); *In re Lochmiller Indus.,* 178 B.R. 241, 253–54 (Bankr.S.D.Cal.1995). There is a split in the authority as to whether a court may exercise discretion in deciding whether to order disgorgement or whether the Bankruptcy Code compels disgorgement. *Anolik,* 207 B.R. at 38–39. Nonetheless, "[i]f some administrative ex-

---

**13.** Section 331 provides for interim compensation, allowing professionals to apply for and receive payment for services rendered at that time, rather than having to wait until the final distribution:

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case

under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. § 331.

penses are paid on an interim basis and it is ultimately determined that there will be insufficient funds to similarly pay all other administrative claims, those who have received interim payments may be required to disgorge funds so that all administrative claims share pro-rata...." *Vernon Sand & Gravel, Inc.,* 109 B.R. at 259 (quoting *In re Kaiser Steel Corp.,* 74 B.R. 885 (Bankr. D.Colo.1987)). Courts have reasoned that the failure to disgorge would create a superpriority for professionals who receive an interim payment over other chapter 7 administrative claimants within the same class. *Specker Motor Sales Co.,* 300 B.R. at 691; *Guinee v. Toombs (In re Kearing),* 170 B.R. 1, 8 (Bankr.D.D.C.1994); *Metro. Elec. Supply Corp.,* 185 B.R. at 511–12. So even if Special Counsel had received the entire contingency fee as compensation earlier in the case, the fee may still be subject to reduction and disgorgement at the time of the final distribution. Thus, Special Counsel should realize if the estate is administratively insolvent, funds may not be available to pay its compensation claim, despite the Application to Employ and the contingent fee contract.

■ Numerous courts have ruled that "professionals seeking compensation from the bankruptcy estate do so at the risk that the estate will not have sufficient funds to satisfy their claims." *Kearing,* 170 B.R. at 8. *See In re Kids Creek Partners, L.P.,* 219 B.R. 1020, 1022 (Bankr. N.D.Ill.1998) (hereinafter *"Kids Creek I"*)

(awarding administrative claim to court reporter and requiring the disgorgement of interim fees paid to trustee's special counsel for *pro rata* distribution); *Matz v. Hoseman,* 197 B.R. 635, 640 (N.D.Ill.1996); *Metro. Elec. Supply Corp.,* 185 B.R. at 510; *Lochmiller Indus., Inc.,* 178 B.R. at 253–54. Many of these courts reason that these professionals practice in the bankruptcy field and are familiar with the Bankruptcy Code. Therefore, they are presumed to have knowledge of section 726(b) and are on notice of the potential for disgorgement or reduction in fees should the estate be administratively insolvent.[14] *Kids Creek Partners, L.P.,* 236 B.R. 871, 878 (Bankr.N.D.Ill.1999) (ordering the disgorgement of interim administrative fees and expenses by trustee and special counsel because creditors' superpriority claim had priority over administrative expenses); *Kids Creek I,* 219 B.R. at 1022; *Hoseman,* 197 B.R. at 640; *Metro. Elec. Supply Corp.,* 185 B.R. at 509–11. *See also Vernon Sand & Gravel, Inc.,* 109 B.R. at 259; *In re Pacific Forest Indus., Inc.,* 95 B.R. 740, 743 (Bankr.C.D.Cal.1989) ("The Bankruptcy Code also deals differently with fees of professionals than with payment of other people who provide services to the debtor.... It is only those who deal with the actual reorganization of the debtor (rather than the ongoing business of the debtor) who are required to be employed under § 327 and whose applications for payment must be approved by the Court."). In essence, those who voluntari-

---

**14.** Some courts have strongly admonished these professionals. *See, e.g., Shaia v. Durrette, Irvin, Lemons & Bradshaw, P.C. et al (In re Metro. Elec. Supply Corp.),* 185 B.R. 505, 511 (Bankr.D.Va.1995) ("If anything is 'unfair' in this Court's view of this matter, it is that professionals who regularly appear before the Court would force the Trustee to seek a judicial resolution of this dispute when

§ 726(b) so clearly sets out the priority for payment of administrative claims. The Orders of this Court anticipated payment of the awarded compensation from funds remaining in the estate, in compliance with § 726(b). The payments made in excess of the amount due under § 726(b) are property of the estate, and must be returned pursuant to § 542.").

ly represent parties in a bankruptcy case assume the risk of non-payment or disgorgement of interim fees should the case fail. *Wilson–Seafresh, Inc.,* 263 B.R. at 632. Special Counsel has extensive bankruptcy experience, handling various bankruptcy matters, representing debtors and creditors, and even serving as a Chapter 7 Trustee.

██ Nonetheless, Special Counsel maintains that:

> [It] agreed to take the risk that [it] would be limited to a one-third ceiling, even if the value of its work exceeded one third of the recovery. The other chapter 7 professionals agreed to take the risk that the estate would not obtain enough money to pay them in full. [Special Counsel] did not take the further risk that it would donate its work twice: once if the value of its work exceeded a third of the recovery; and then again, from [Special Counsel's] third, if the other professionals were not completely paid for the estate's two thirds.

Application for Compensation, pp. 3. Special Counsel is a professional hired by the Trustee and, like other professionals, subject to the provisions of the Bankruptcy Code, including section 726(b). However, Special Counsel argues that it did not "agree" to the application of section 726, and thus the agreement was void as there was no meeting of minds or a frustration of purpose. Clearly, the parties had reached an agreement, as evidenced by the contingency fee agreement and Application for Employment. The Court must look to the context of the agreement to resolve the dispute that has arisen. Administrative insolvency was foreseeable, particularly where Special Counsel, as Debtor's Counsel, is aware of the Debtor's condition and

requested that the chapter 11 case be converted to a case under chapter 7. The Court has considered each of the contract arguments made by Special Counsel. None of the positions provides the Court with a sufficient reason to void the contingency fee agreement or ignore section 726(b).

██ In the alternative, Special Counsel claims an attorney's lien pursuant to the Georgia Attorney's Lien Statute, section 15–19–14 of the Official Code of Georgia, as a result of the settlement. Although Special Counsel fails to explain this argument, the Court will address the issue. To determine whether Special Counsel holds a lien on property of the estate, and therefore the nature of the legal or equitable interest of the debtor, the Court must look to nonbankruptcy law. "Property interests are created and defined by state law." *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Accordingly, state law determines the validity of an attorney's lien in bankruptcy, while enforceability of the lien is a matter of federal law. The attorney charging lien is an equitable interest in money or property awarded or recovered through the attorney's services. Georgia law provides for the creation, priority, and enforcement of the attorney's lien by statute, section 15–19–14, which provides, in pertinent part:

> (b) Upon actions, judgments, and decrees for money, attorneys at law shall have a lien superior to all liens except tax liens; and no person shall be at liberty to satisfy such an action, judgment, or decree until the lien or claim of the attorney for his fees is fully satisfied. Attorneys at law shall have the same right and power over the actions, judgments, and decrees to enforce their

liens as their clients had or may have for the amount due thereon to them.

(c) Upon all actions for the recovery of real or personal property and upon all judgments or decrees for the recovery of the same, attorneys at law shall have a lien for their fees on the property recovered superior to all liens except liens for taxes, which may be enforced by mortgage and foreclosure by the attorneys at law or their lawful representatives as liens on personal property and real estate are enforced. The property recovered shall remain subject to the liens unless transferred to bona fide purchasers without notice.

(d) If an attorney at law files his assertion claiming a lien on property recovered in an action instituted by him, within 30 days after a recovery of the same, his lien shall bind all persons.

. . . .

O.C.G.A. § 15–19–14. The provision is in derogation of the common law and must be strictly construed. *Decorating Direct v. Crawford (In re Decorating Direct)*, 200 B.R. 702, 705 (Bankr.N.D.Ga.1996) (Cotton, J.); *Woodward v. Lawson*, 225 Ga. 261, 262, 167 S.E.2d 660, 661, *cert. denied*, 396 U.S. 889, 90 S.Ct. 175, 24 L.Ed.2d 163 (1969); *White v. Aiken*, 197 Ga. 29, 33, 28 S.E.2d 263, 266 (1943); *Middleton v. Westmoreland*, 164 Ga. 324, 328, 138 S.E. 852, 854 (1927); *May v. May*, 180 Ga.App. 581, 582, 349 S.E.2d 766, 767–68 (1986). An attorney's lien arises upon the attorney's employment and is perfected by the ultimate recovery of the judgment for his client. *Lipton v. Warner, Mayoue & Bates, P.C.*, 228 Ga.App. 516, 518, 492 S.E.2d 281, 283 (1997); *Ramsey v. Sumner*, 211 Ga.App. 202, 204, 438 S.E.2d 676, 678 (1993); *Molloy v. Hubbard*, 48 Ga.App. 820, 821, 173 S.E. 877, 878 (1934); *Metro.*

*Life Ins. Co. v. Price*, 878 F.Supp. 219, 220 (N.D.Ga.1993) (Vining, J.). Moreover, the filing requirement of subsection (d) applies only to liens arising under subsection (c); it does not concern liens arising in actions for money. *In re Diamond Mfg. Co.*, 123 B.R. 125, 129 (S.D.Ga.1990) (Edenfield, C.J.), *aff'd sub nom. Moore v. Diamond Mfg. Co.*, 959 F.2d 972 (11th Cir.1992). *Cf. In re Info. Exch., Inc.*, 98 B.R. 603, 604 (Bankr.N.D.Ga.1989) (Drake, J.). Accordingly, liens arising under section 15–19–14(b) are automatically perfected upon recovery of the judgment. In the instant case, Special Counsel filed an action to recover (i) overcharges, (ii) funds held by Pearce in a reserve account, (iii) attorney's fees withheld by Pearce, (iv) interest on these monies, and (v) punitive damages. This action was for money, and thus falls within the purview of section 15–19–14(b), which is automatically perfected upon recovery of the judgment. Special Counsel recovered a judgment for the Trustee on behalf of the estate, but was not employed to represent the Trustee until the bankruptcy petition was filed. Consequently, the lien did not arise and was not perfected until after the filing of the petition.

Upon the filing of a petition, section 362 of the Bankruptcy Code provides for an automatic stay of "any act to create, perfect, or enforce any lien against property of the estate...." 11 U.S.C. § 362(a)(4). Despite this prohibition, sections 362(b)(3) and 546(b) allow post-petition perfection of liens in property of the debtor or of the estate if state law provides that upon perfection the lien relates back to a pre-petition date. Georgia attorney's liens arise upon the attorney's employment and is perfected by the ultimate recovery of the judgment. In the instant case, the lien did not arise and was not perfected until after the filing of the petition, and thus does not

relate back to a pre-petition date. Accordingly, the automatic stay prevents Special Counsel from obtaining a post-petition lien for post-petition services.

## IV. CONCLUSION

The Court has carefully considered the Application for Compensation and any amendments thereto. Reviewing Special Counsel's fees pursuant to the standards articulated in section 330 and *Johnson,* as Special Counsel has not addressed section 328, the Court finds that the contingency fee requested is reasonable. The Court awards Special Counsel $13,614.49, one-third of the recovery from the Pearce Adversary Proceeding in the amount of $12,545.33 plus reimbursement of expenses in the amount of $1,069.16. Despite its laudable efforts, Special Counsel is not entitled to a fee enhancement. In addition, Georgia law prevents Special Counsel from obtaining an attorney's lien. Special Counsel's contingent fee is a chapter 7 administrative expense under sections 503(b)(2) and 507(a)(1), which should be paid *pro rata* in accordance with the priority scheme of section 726. The language of section 726 is mandatory, thereby preventing the Court from exercising discretion or contemplating the equities of the circumstances. Special Counsel has petitioned for fees at the time of the final distribution of an administratively insolvent estate, and thus the remaining funds should be distributed to all similarly situated administrative claimants equally. Special Counsel, a professional hired by the Trustee to increase the estate's assets and thereby the distribution to creditors, should have been aware of the risk that the estate may not have sufficient funds to satisfy its claim. Unfortunately, Special Counsel must suffer a *pro rata* diminution of its anticipated compensation. For the foregoing reasons,

**IT IS ORDERED** that the Application for Compensation be and is hereby **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Special Counsel is entitled to an administrative expense in the amount of $13,614.49 subject to *pro rata* distribution as specified in the Trustee's Final Report.

**IT IS SO ORDERED,** this _____ day of August, 2005.