**In re CORON, INC., Debtor.**

**Bankruptcy No. 84 B 04908.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Dec. 3, 1993.

L. Judson Todhunter, Gallagher & Joslyn, Oakbrook Terrace, IL, for Chapter 7 Trustee.

Paul M. Bauch, David D. Cleary, Bell Boyd & Lloyd, Chicago, IL, for Sears Boodell.

### MEMORANDUM OPINION ON BOODELL SEARS' OBJECTION TO TRUSTEE'S FINAL REPORT AND ACCOUNT

JACK B. SCHMETTERER, Bankruptcy Judge.

Coron, Inc. ("Coron" or "Debtor") filed for protection under Chapter 11 of the Bank-

ruptcy Code on April 16, 1984. During pendency of the Chapter 11 proceeding, Debtor was authorized to retain Boodell, Sears, Giambalvo & Crowley ("Boodell Sears") as special litigation counsel to pursue claims on behalf of Debtor. This proceeding was subsequently converted to one under Chapter 7 of the Bankruptcy Code. Following considerable work and many activities, on September 1, 1992, the Chapter 7 Trustee L. Judson Todhunter ("Trustee") filed his Final Report and Account and Application to Close the Case. He recommends therein that the claim of Boodell Sears for special counsel fees and expenses allowed by the Court in the amount of $92,019.36 be paid only as a priority debtor-in-possession claim under 11 U.S.C. § 503(b), along with other claims having priority under that provision. The Clerk set all fee matters for hearing on July 29, 1993. Boodell Sears then objected to such treatment, asserting that its work provided a substantial benefit to the estate. It claims a right to be paid 100% from estate funds. The United States Trustee has supported the Chapter 7 Trustee's position. For reasons set forth below, Boodell Sears' objection is overruled.

### UNDISPUTED FACTS

Debtor first filed for protection under Chapter 11 of the Bankruptcy Code on April 16, 1984. On November 15, 1984, this Court approved appointment of Boodell Sears as special counsel for Debtor to investigate and, if necessary, pursue claims against American Heritage Saving and Loan Association ("American Heritage"). That firm was retained on an hourly compensation basis, not legally contingent on success, but obviously subject to any limits on available funds. It represented debtor in a suit asserting three claims. On September 9, 1986, this Court found that such services rendered by Boodell Sears and its expenses for the period of October 19, 1984 through June 30, 1985 were reasonable and necessary. Accordingly, $43,422.00 was allowed for legal fees and $2,087.83 for expenses. On January 27, 1987, Boodell Sears' legal fees in the amount of $36,960.50 and its expenses in the amount of $9,049.02, for the period July 1, 1986 through November 30, 1986, were approved. Its ap-

proved fees and expenses in Chapter 11 thus total $92,019.36. Boodell Sears has not since sought additional fees and expenses, and has not yet sought fees for services (if any) rendered to the Chapter 7 Trustee after conversion of the proceeding to Chapter 7.

On January 27, 1987, Debtor's case was converted to a proceeding under Chapter 7 of the Bankruptcy Code, and L. Judson Todhunter was appointed as trustee. On December 22, 1987, this Court approved a proposed settlement of the American Heritage litigation for $173,500.00 paid to the estate. Without objection, those funds were commingled with other estate funds. Until that date, Boodell Sears had continued to prosecute the claims against American Heritage.

The Chapter 7 trustee's Final Report recommends that Boodell Sears' claim No. B–6 for legal fees and expenses in the amount of $92,019.36 be paid pro-rata as a priority claim pursuant to 11 U.S.C. § 503(b), as a debtor-in-possession administrative claim, sharing with other Chapter 11 administrative claims. From a total of over $1,826,000.00 collected by the Trustee from the asset liquidation as well as the litigation, there remains over $188,000.00 (net of various disbursements including secured debt) for distribution. Chapter 7 administrative claims total about $45,000.00. Given the extent of the Chapter 11 priority claims under § 503, the estate is administratively insolvent, and Boodell Sears will receive only a pro rata payment on its claim if the Trustee's position is sustained. Boodell Sears objected to the Report and Accounting, maintaining that its claim for special counsel fees and expenses should be paid in full before the amounts generated through its efforts out of the American Heritage litigation are applied toward payment of any other creditor. To date, Boodell Sears has not received any payment on its allowed fees and expenses.

### Jurisdiction

This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred under Local District Court Rule 2.33. The Court has subject matter jurisdiction under 28

U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## DISCUSSION

Boodell cites two different lines of authority in support of the position that it is entitled to receive compensation in full from the settlement fund. The first is a "common fund" theory, the second an assertion of the "substantial benefit" doctrine. The Trustee argues that there is no statutory support for Boodell Sears' position that it is entitled to receive distribution from the estate ahead of other Chapter 11 administrative claimants.

The "common fund" and "substantial benefit" doctrines arose as equitable exceptions to the "American Rule." Under the "American Rule," each party to litigation bears its own fees and expenses. *Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir.1988). Under the common fund and the substantial benefit doctrines, the party who labors to create a particular fund receives compensation for its efforts directly from the fund created through the work of the professional. The result is that cost of litigation is spread among all beneficiaries of such litigation, rather than borne only by the party who initiated litigation. *Id.*

The common fund doctrine is based on the theory that a party who performs services in creating or preserving a common fund for the benefit of others should be allowed compensation for fees and expenses generated by creating such fund for the beneficiaries thereof. The Supreme Court applied the common fund doctrine as early as *Trustee v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1882), reasoning that it would be unjust for the one recovering bondholder to bear all expenses of litigation, when the other bondholders also benefited. *Id.* at 534–35. The common fund doctrine has since been applied in many situations, including antitrust litigation, mass disaster torts, class actions, and shareholder derivative suits. *See* John F. Vargo, *The American Rule on Attorney Fee Allocation: the Injured Person's Access to Justice,* 42 Am.U.L.Rev. 1567 (1993) and collected cases cited.

According to Boodell Sears, all of Coron's creditors have benefited from the litigation.

Accordingly, the creditors should be required to share the expenses of the litigation, by allowing payment to Boodell Sears directly out of the settlement fund.

The substantial benefit doctrine is also based upon the equitable principle that non-parties benefiting from litigation should share costs of litigation; otherwise the other beneficiaries are unjustly enriched. John F. Vargo, *Id.* The substantial benefit rule generally does not apply in cases involving a fund. It is typically applied in corporate shareholder suits and union member actions. *Id. citing Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

### Limitations on the Doctrines Asserted

The parties agree that, if Boodell Sears is right, it must recover under the same theory as any attorney pursuing recovery in an Illinois court under non-bankruptcy law. Illinois authorities would therefore be pertinent. The United States Trustee argues that the Illinois Courts have restricted application of the common fund doctrine to insurance subrogation, shareholder derivative suits, and class action lawsuits, *citing In re Cash Currency Exchange, Inc.,* 80 B.R. 113 (N.D.Ill. 1987); *In re Key West Restaurant & Lounge, Inc.,* 54 B.R. 978, 985 (Bankr. N.D.Ill.1985).

Boodell Sears responds that courts have recently applied the common fund doctrine in a bankruptcy context. *In re Willis,* 143 B.R. 428, 434 (Bankr.E.D.Tex.1992). In *Willis,* the Court allowed payment of attorney fees under the common fund doctrine. 143 B.R. 428. There the debtor had entered into a contingency fee contract with an attorney who agreed to represent him in a personal injury suit. *Id.* at 428. The relationship between the debtor and his counsel deteriorated. Notwithstanding, counsel succeeded in settling the case for the sum of $50,000. Shortly after reaching settlement, the debtor filed for relief under Chapter 7 of the Bankruptcy Code. *Id.* Counsel sought to recover his expenses and fees from the estate. The court found that the contingency contract was an executory contract which had not been assumed by the estate, and as such was

unenforceable. *Id.* at 432. However, the court also ruled that the debtor and the Chapter 7 trustee terminated the contingency fee agreement simply to maximize the estate, not for good cause. *Id.* The court held that such a result would be inequitable, and, under the common fund doctrine, the attorney was allowed to recover his contingent fees from the settlement fund rather than as an unsecured creditor. *Id.* at 432–34.

In the present case, there has been no showing that Debtor or any parties acted improperly to convert to Chapter 7 or to deny Boodell Sears the fees it earned. In addition, unlike the attorney in *Willis* who would have taken little as a general unsecured creditor, Boodell Sears will receive partial pro rata payment as a Chapter 11 priority administrative claimant under 11 U.S.C. § 503(b). Moreover, to the extent that *Willis* can be read to stand for doctrine beyond its factual setting, this Court finds it inconsistent with the statutory distribution scheme under the Bankruptcy Code, and will not follow it.

Both Illinois and federal courts have considered the common fund doctrine. The Seventh Circuit stated in *Insurance Co. of North America v. Norton,* 716 F.2d 1112, 1116 (7th Cir.1983) that "[r]ecent case law in Illinois ... has restricted the application of the common fund doctrine to class actions and insurance subrogation cases." *See also In re Key West Restaurant & Lounge,* 54 B.R. 978 (Bankr.N.D.Ill.1985); and *In re Cash Currency Exchange, Inc.,* 80 B.R. 113 (N.D.Ill. 1987) (application of common fund doctrine on similar facts denied). Boodell seeks to distinguish the reasoning of *Key West,* which did not allow an attorney to recover under the common fund doctrine, on grounds that attorney fees were denied there because the settlement was reached pre-petition, and the attorneys did not represent the bankruptcy estate. However, that distinction is misplaced. Boodell Sears is not entitled to recover under the common fund or the substantial benefit doctrines because it was not suing on behalf of a class of creditors of this estate or on behalf of a class of administrative claimants.

### *Priorities Set by the Bankruptcy Code are Controlling*

However, we need not determine the reach of doctrines asserted by Boodell Sears unless they can apply at all. The threshold question is whether either doctrine can modify priorities of distribution fixed under the Bankruptcy Code.

The United States Trustee correctly points out that the common fund and the substantial benefit doctrines are inconsistent with the Code's priority scheme. Boodell Sears' claim falls within the definition of an administrative claim pursuant to § 503 of Bankruptcy Code Title 11 U.S.C. Its claim must be paid along with other administrative claims pursuant to the priority scheme of § 507(a)(1). Moreover, § 726(b) provides in relevant part:

> Payment on claims of a kind specified in paragraph (1) ... of section 507(a) of this title [administrative expenses allowed under § 503(b) ... shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this Chapter [Chapter 7] ... a claim allowed under section 503(b) of this title incurred under this Chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other Chapter....

11 U.S.C. 726(b).

[2] These Code sections demonstrate expressly that there is no statutory authority for Boodell Sears' position. The Debtor's estate here is administratively insolvent. Pursuant to § 726(b), the Chapter 11 administrative claimants should receive pro rata distribution after payment of all Chapter 7 administrative expenses. As one commentator stated, "Section 507 is intended to be the exclusive list of priorities in bankruptcy. Priorities are to be fixed by Congress. Courts are not free to fashion their own rules of superpriorities or subpriorities within any given priority class." 3 *Collier on Bankruptcy,* § 507.02 at 507–11 (15th ed. 1992).

Since Boodell Sears' objections fail, its claim falls within the definition of an administrative claim pursuant to § 503(b) of the

Bankruptcy Code. Because the debtor's estate is administratively insolvent, pursuant to § 726(b), the Chapter 11 administrative claimants should receive pro-rata distribution after payment of all Chapter 7 administrative expenses.

There is no authority to pay counsel first and thereby spread the costs of litigation based on the Court's view of fairness, because the Bankruptcy Code's distribution scheme will achieve the result deemed by Congress to be fair.

Apart from the lack of authority to contravene the statutory scheme, Boodell Sears has shown no equitable reason why its claim should be elevated above other Chapter 11 administrative claimants. All administrative claimants are by definition parties who directly or indirectly assist the debtor in Chapter 11 proceedings to maintain or increase the size of the estate, thus increasing possibility of distribution to creditors. Common examples of such potential administrative creditors include business vendors and suppliers, accountants who assist the debtor in collecting tax refunds or reducing tax liabilities, auctioneers who assist with liquidating debtor's assets, and counsel who may have given debtor a chance to survive. Under Boodell Sears' application of the common fund and substantial benefit doctrines, these individuals would be entitled to receive payment directly from any "fund" or "benefit" they had a part in creating. Such a result would certainly disrupt the distribution scheme in a manner not intended or contemplated by the plain language of the Bankruptcy Code. Creditors who assist a debtor with its reorganization efforts are rewarded for their assistance by receiving preferential status as Chapter 11 administrative claimants. It would violate the distribution scheme of the Bankruptcy Code to allow Boodell Sears to receive greater proportionate benefit from available funds than other administrative creditors.

■ Additionally, since the settlement paid by American Heritage went into the general commingled estate account without objection or assertion of lien or other claims by Boodell Sears, it is problematic whether there is a "fund" at all. Some monies received by the Trustee came from asset liquidation after payment of secured debt and various administrative expenses. Dollars received by the estate are fungible unless the administrative creditor is protected by court approved contract with a right to share in certain litigation proceeds, or has some lien or property interest in the proceeds of its efforts.

Boodell insists that the common fund and the substantial benefit doctrines are not inconsistent with the Bankruptcy Code's distribution scheme, *citing Telesphere Communications, Inc.*, 148 B.R. 525 (Bankr.N.D.Ill. 1993). According to Boodell, *Telesphere* reasoned that permitting immediate payment of rent payments prior to payment of other Chapter 11 claimants did not violate general rules of pro-rata payment. However, when Bankruptcy Judge Wedoff in *Telesphere* allowed timely payment of operational expenses such as post-petition rent, he carefully distinguished the payment of such operational expenses from the payment of other administrative claims, which would require prior court approval. *Id.* at 530. Boodell Sears' claim here cannot be classified as an operational expense, and *Telesphere* cannot be read with the breadth suggested by Boodell Sears. *Telesphere* reasoned that a debtor must pay rents due ahead of other administrative claims, pursuant to 11 U.S.C. § 365(d)(3). *Id.* at 531. Because specific statutory authority under § 365(d)(3) requires payment of rents due on executory contracts, *Telesphere* is distinguishable from this case.

■ The equitable rationale that those who benefit from litigation should share its costs cannot always be applied in a bankruptcy case. *See In re Churchfield Management & Investment Corporation*, 98 B.R. 838, 849 (Bankr.N.D.Ill.1989) and cases cited. In bankruptcy, all creditors of the debtor share the burden of paying for all legal services rendered. The attorney in bankruptcy does not often face the same type of contingency risk as the usual class action litigator. While in class actions the attorney usually recovers only if successful, in bankruptcy the attorney generally recovers some fees from the estate if funds are available from any source even if

a particular effort is not entirely successful. The work of Boodell Sears and its engagement terms did not make it into a contingent fee class litigator.

### CONCLUSION

Absent statutory authority giving Boodell Sears a priority over other Chapter 11 administrative claimants, this Court cannot create such a priority. By separate order entered September 24, 1993, the objection to Trustee's Final Report and Accounting was overruled, and the Trustee's proposed treatment of the Boodell Sears claim was approved.