**In re Joyce Evelyn PATTON, Debtor(s).**

No. 03–44030.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Jan. 19, 2007.

Adam G. Schachter, Weisblatt & Associates, Houston, TX, for Debtor.

## MEMORANDUM OPINION REGARDING APPLICATION TO EMPLOY SPECIAL COUNSEL NUNC PRO TUNC

MARVIN ISGUR, Bankruptcy Judge.

On October 10, 2006, the chapter 7 trustee filed a *nunc pro tunc* application to

employ Nicholas Johnson, of Johnson, Burnett & Changare, as special counsel [doc. no. 52]. The Court issued an order expressing concerns as to the application and requiring briefing [doc. no. 53]. The Trustee submitted a brief on December 8, 2006 [doc. no. 55].

For the reasons set forth below, the Trustee's motion to employ Johnson *nunc pro tunc* is denied by separate order issued on this date. The facts are not in dispute.

## Background

Joyce Evelyn Patton filed for chapter 13 bankruptcy on October 3, 2003. Her case was converted to a case under chapter 7 on June 30, 2004. William G. West ("Trustee") was appointed as the chapter 7 trustee.

Prior to filing bankruptcy, Patton entered into a contingency fee agreement with Nick Johnson, of Johnson, Burnett & Chang, LLP. As part of that agreement, Johnson agreed to represent Patton in litigation against Wyeth Laboratories. That litigation sought to recover damages from Wyeth for injuries allegedly incurred after Patton's use of Fen–Phen, a combination of weight loss drugs manufactured by Wyeth.

On or about July 5, 2006, the Trustee was informed that Wyeth had agreed to a global settlement that included the class of litigants of which Patton is a member. The class members are due to receive compensation for their causes of action.

On October 2, 2006, the Trustee filed his application to employ Johnson as special counsel for the estate, *nunc pro tunc*. The

application requested employment *nunc pro tunc*, because Johnson had already completed the bulk of the legal work at the time of the application. In response to the Trustee's application, the Court expressed concern as to whether *nunc pro tunc* employment was in the best interests of the estate. Essentially, the issue before the Court is whether the proposed special counsel's pre-petition fees should be treated as a general unsecured claim against the estate or whether proposed special counsel should be employed by the estate with the estate bearing the costs of the special counsel's fee as an administrative expense of the estate.

## Motion to Employ

■ The contingency fee agreement between Patton and Johnson was entered into pre-bankruptcy. A contract for attorney's fees on a contingency basis such as the one in this case is generally considered to be an executory contract under Texas law. *Turner v. Avery,* 947 F.2d 772, 774 (5th Cir.1991); *In re Willis,* 143 B.R. 428, 431 (Bankr.E.D.Tex.1992). The Trustee did not timely assume the contingency fee agreement and acknowledges that it has been rejected as a matter of law.[1] 11 U.S.C. § 365(d)(1).[2]

■ Since the contract was partially performed prior to bankruptcy and then rejected by the Trustee, the Court must consider the nature of Johnson's creditor status when evaluating the motion to employ. If Johnson is already a secured creditor based upon the fee agreement, approving the motion to employ will have little effect on the distribution of estate funds. However, if Johnson is an unse-

---

1. Presumably, if the agreement had not been rejected as matter of law, the Court would be faced with the identical issues set forth below if the trustee moved to assume the contingency fee contract.

2. This case was filed in 2003. Accordingly, the 2005 revisions to the Bankruptcy Code are generally inapplicable. All statutory references are to the Bankruptcy Code prior to the 2005 amendments.

cured creditor, approving the motion to employ will result in elevating Johnson's unsecured claim against the estate to a claim with administrative priority.

■ The Court finds that Johnson is an unsecured creditor—the fee agreement did not create a lien against the estate. Under Texas law, "an attorney does not receive a legal or equitable interest pursuant to a contingency fee contract until the contingency actually occurs." *Marre v. United States,* 117 F.3d 297, 308 (5th Cir. 1997) (quoting *In re Willis,* 143 B.R. 428, 431 (Bankr.E.D.Tex.1992)).

Exactly what constitutes the occurrence of the contingency in a contingency fee agreement is somewhat unclear. However, it is apparent that some final resolution of the litigation must be accomplished for the contingency to occur. In *Marre,* the Fifth Circuit explained Texas law as follows:

> Although it is unclear what constitutes the defining moment at which the contingency occurs, *compare Lee [v. Cherry],* 812 S.W.2d [361] at 363 (contingency occurs after "reduction to judgment") *with White [v. Brookline Trust Co.],* 371 S.W.2d [597] at 600 (contingency occurs after "prosecuting or defending to final judgment all suits") *and Carroll [v. Hunt],* 140 Tex. 424, 168 S.W.2d [238] at 240, 242 (contingency occurs after "successful termination of the litigation"), we believe that at minimum, the contingency cannot occur before judgment is affirmed on appeal or when the time for filing an appeal has lapsed. *See Lee,* 812 S.W.2d at 363 (explaining that "an executory contract is one that is still unperformed by *both* parties or one with respect to which something still remains to be done on *both* sides") (internal quotations omitted) (emphasis in original).

*Marre v. United States,* 117 F.3d at 308, n. 19.

In this case, the litigation was not fully resolved as of the petition date. Consequently, the Court finds that the contingency had not occurred as of the petition date. Therefore, Johnson does not have a lien against the estate. Johnson does have a claim against the estate based on his prepetition contract with the Debtor. Consequently, Johnson is an unsecured creditor.

■ Despite Johnson's status as an unsecured creditor, the Trustee argues that Johnson should be employed *nunc pro tunc* and his contingent portion of the settlement, once finalized, should be paid in full as an administrative cost of the estate since the settlement will benefit the entire estate. The Trustee bases his position on principles of equity and the common fund doctrine.

The Trustee looks to *In re Willis* as a basis for awarding Johnson administrative status under the common fund doctrine. *Willis* defines and applies the common fund doctrine as follows:

> In pertinent part, the common fund doctrine recognizes that "one who accomplishes the creation of a fund for the benefit of another is entitled to reimbursement therefrom for the reasonable costs thereby incurred ..." *Haynes v. Rederi A/S Aladdin,* 362 F.2d 345, 351 (5th Cir.1966); *Cappel v. Adams,* 434 F.2d 1278, 1279 (5th Cir.1970); *Knebel v. Capital Nat. Bank in Austin,* 518 S.W.2d 795, 799 (Tex.1974)....

> In this case, the Court finds that the application of the common fund doctrine is justified. Counsel is entitled to seek recovery of his attorney's fees out of the proceeds of settlement of the law suit in preference and priority over other claimants rather than as a general unsecured creditor of Debtor's estate.

*In re Willis,* 143 B.R. 428, 433–34 (Bankr. E.D.Tex.1992).

The Fifth Circuit, quoting the Supreme Court, further described the doctrine:

> There is no substantive difference between the Texas and federal versions of this doctrine; in essence both provide that 'a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.' 'The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without first contributing to its costs are unjustly enriched at the successful litigant's expense.'

*Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, et al.*, 354 F.3d 348, 360 (5th Cir.2003) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)). *See also Marre*, 117 F.3d at 308 ("The common fund doctrine ... typically applies in situations where the attorneys sue for an interest commonly held by members of a class or third parties who benefit from the suit—which is not the situation here.").

Whether the common fund doctrine applies in this suit is unclear. The terms of the settlement are confidential and have not been provided to the Court. Additionally, the Trustee's motion does not make it clear whether the potential settlement, termed a "global settlement," was entirely negotiated by Johnson, or whether Johnson only assisted in negotiating the settlement portion to be allotted to this Debtor. If Johnson only negotiated the portion of the settlement to be allotted to this Debtor, it is unclear what fund has been recovered for the benefit of what third parties.

■ Nevertheless, it is ultimately immaterial whether the common fund doctrine applies in this case—the result would be the same. If the doctrine applies, Johnson is entitled to a claim against the fund amount for his contingency fee. Such a claim would still be pre-petition and unsecured and Johnson's client would still be in bankruptcy. The common fund doctrine only determines whether and how much an attorney should be paid for the work that produced the common fund. It does not establish the priority of that entitlement vis-à-vis other creditors of a bankrupt estate.

In this case, awarding priority based on the common fund doctrine is not consistent with the priority scheme set out in the Bankruptcy Code. Any such inconsistency must be settled in favor of the Code. "Section 507 is intended to be the exclusive list of priorities in bankruptcy. Priorities are to be set by Congress. Courts are not free to fashion their own rules of superpriorities or subpriorities within any given priority class." 3 COLLIER ON BANKRUPTCY ¶ 507.02, p. 507–11 (15th ed.1992). As recently noted by the Supreme Court, "preferential treatment of a class of creditors is in order only when clearly authorized by Congress." *Howard Del. Svc. v. Zurich American Ins.*, —— U.S. ——, ——, 126 S.Ct. 2105, 2109, 165 L.Ed.2d 110 (2006).

This Court, unlike *Willis*, does not see how the common fund doctrine can be used to circumvent the distribution scheme outlined in the Code. The doctrine is useful in establishing how and whether an attorney is paid in a common fund scenario. Once that is determined, an attorney's claim to funds must be paid only in accordance with the bankruptcy priorities established by Congress. Much like the court in *In re Coron*, 161 B.R. 449, (Bankr.N.D.Ill.1993), "to the extent *Willis* can be read to stand for doctrine beyond its factual setting, this Court finds it inconsistent with the statutory distribution scheme under the Bankruptcy Code...." *In re Coron*, 161 B.R. at 452.

■ Finally, the Trustee argues that equity requires that Johnson receive a 100% payout on his contingency fee claim. The Trustee again cites *Willis*, which states that "had it not been for the efforts of counsel, there would be no controversy for this Court to decide." *Willis*, 143 B.R. at 433. This Court disagrees with the conclusion that equity should result in full payment of Johnson's claim.

It is the nature of bankruptcy that creditors are often not paid in full. By all accounts Johnson performed his work skillfully and efficiently. Yet, the Court is confident that many creditors who diligently supply services or funds do not receive the full payment they deserve. The most analogous example for this case is an attorney who works on an hourly fee basis. When such an attorney labors prepetition on non-bankruptcy matters, the treatment of that attorney's claim for fees is clear: the attorney has an unsecured claim for the fees earned, and will share pro-rata in any distribution made to unsecured creditors in the same class.

■ Compensation of professionals is generally governed by § 330 of the Bankruptcy Code. An attorney may be awarded "a reasonable compensation for actual, necessary services rendered by the ... attorney." 11 U.S.C. § 330(a)(1)(A). Section 330 only applies to professionals retained under § 327. Section 327 authorizes the retention of an attorney "to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Consequently, only an attorney retained under § 327 may receive compensation pursuant to § 330. *In re Foster*, 247 B.R. 731, 732 (Bankr. S.D.Ohio 2000).

Section 328 authorizes the trustee to retain counsel on a retainer, hourly or contingent fee basis. 11 U.S.C. § 328(a).

■ An attorney paid on an hourly basis who is not retained under § 327 holds only an unsecured claim. *In re Foster*, 247 B.R. 731, 733 (Bankr. S.D.Ohio 2000) ("Therefore, to the extent [counsel] has a claim for hourly fees for services performed for the debtor prior to the bankruptcy filing ... she may have an unsecured claim against the bankruptcy estate."); *In re Castle Ventures, Ltd.*, 167 B.R. 758 (Bankr.E.D.N.Y. 1994) (law firm's prepetition fees rendered in connection with unrelated matter allowed as unsecured claim); *In re Powell*, 314 B.R. 567, 572 (Bankr. N.D.Tex.2004) ("The portion of the work performed pre-petition constitutes a claim against the bankruptcy estate. The portion of the work performed post-petition constitutes an administrative expense. . . .").

The Trustee has not provided any reasoning to support the proposition that a lawyer working on a contingency fee basis should receive superior treatment to that received by a lawyer working on an hourly basis. Indeed, § 328(a) is structured to place attorneys who do post-petition work for the estate on the same footing whether the attorneys are retained on a retainer, hourly or contingent fee basis. The Court finds the situation presented by the Trustee's motion to be analogous. There is no reason to contravene Congress' equitable determination that there should be post-petition equality between hourly and contingent fee lawyers by imposing a judicial determination that there should be pre-petition inequality between contingent and hourly fee lawyers.

Equity demands that an attorney working on a contingency fee basis be treated the same as other persons holding general unsecured claims. Distributions should be made in accordance with the Code's priority scheme. "There is no authority to pay

917

counsel first and thereby spread the costs of litigation based on the Court's view of fairness, because the Bankruptcy Code's distribution scheme will achieve the result deemed by Congress to be fair." *In re Coron*, 161 B.R. at 453.

### Conclusion

For the reasons stated above, the Trustee's application to employ Johnson *nunc pro tunc* is denied. Any services rendered pre-petition are unsecured and payment of those services is subject to the same priority treatment as other unsecured claims. If the Trustee wishes to employ Johnson for post-petition services at a fair rate of compensation for those services, the Court will consider the application in the ordinary course.