**In re NICOLE GAS PRODUCTION, LTD., Debtor.**

**No. 09–52887.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division, at Columbus.

Sept. 27, 2013.

Brenda K. Bowers, Frederick L. Ransier, Columbus, OH, for Frederick L. Ransier, Trustee.

### ORDER TO SHOW CAUSE WHY THE CHAPTER 7 TRUSTEE'S OBJECTION TO THE PROOF OF CLAIM FILED BY ROBERT C. SANDERS SHOULD NOT BE SUSTAINED

JOHN E. HOFFMAN JR., Bankruptcy Judge.

Robert C. Sanders ("Claimant") filed a proof of claim in the Chapter 7 case of

Nicole Gas Production, Ltd. ("Debtor" or "NGP") that was designated on the claims register as claim number 9 ("POC"), asserting an unsecured, nonpriority claim for a contingent attorney's fee in the principal amount of $34,000 ("Principal Claim") plus interest ("Interest Claim") and an unsecured, nonpriority claim for an additional contingency fee in an unliquidated amount ("Additional Contingency Fee Claim"). In his objection to the POC ("Objection") (Doc. 107), the Chapter 7 trustee of the Debtor's estate, Frederick L. Ransier ("Trustee"), contends that the Court should allow the Principal Claim as an unsecured, nonpriority claim and disallow both the Interest Claim as well as the Additional Contingency Fee Claim.[1]

The Claimant attached to the POC a contingency fee agreement that he entered into prior to the commencement of NGP's involuntary bankruptcy case ("Fee Agreement"). The other parties to the Fee Agreement are NGP; Freddie L. Fulson; Nicole Energy Marketing, Inc.; Nicole Energy Services, Inc. and Nicole Gas Marketing, Inc. (collectively, "Client"). Pursuant to the Fee Agreement, the Claimant agreed that he:

shall represent Client in the following five cases on a contingency fee basis:

(i) *Columbia Gas of Ohio, Inc, et al. v. Nicole Energy Services., Inc.,* et al. Court of Common Pleas, Franklin Co., Ohio, Case No. 01 CVH06 5390 (Sadler, J.) (Trial date: June 16, 2003) ["Franklin County Case"]

(ii) *Columbia Gas Transmission Corporation v. Nicole Energy Services, Inc., et al.,* Civil Action No. 02–1528 (W.D.Pa.) (Conti, J.)

(iii) *Nicole Gas Production, Ltd. v. Columbia Gas Transmission Corporation,* Case No. 02–1638–A (E.D.Va.)

(Complaint for Injunctive Relief) (case concluded)

(iv) *Washington Gas Energy Services, Inc. v. Nicole Energy Services, Inc.* (Circuit Court for Anne Arundel County, MD), Civil Action No. C–2002–80998–CN and *Nicole Energy Services, Inc. v. Washington Gas Energy Services Inc.* (Counterclaim in same action) (Pre–Trial Conference: September 17, 2003)

(v) *Petition of Nicole Energy Services., Inc. for a Declaratory Order* (FERC Docket No. RP03–243–000).

Fee Agreement at 1. The Court will refer to these five cases collectively as the "Contingency Fee Cases." In the Fee Agreement, the Claimant and the Client agreed that, if a settlement was reached in one of the Contingency Fee Cases prior to the first day of trial, then "the contingency fee ... shall be ... 33 ⅓% of all amounts received in settlement (in addition to payment/reimbursement of all out-of-pocket cost and expenses), including 33 ⅓% of the market value of all volumes of natural gas credited to Client...." Fee Agreement at 1.

## Principal Claim and Interest Claim

The Principal Claim is based on the market value of natural gas that Columbia Gas Transmission Corporation ("TCO") was ordered in the Franklin County Case to release to NGP, which NGP later sold for $102,000 without "pa[ying] [the Claimant] the $34,000 fee due [him] under the [Fee Agreement]." POC at 4. The Trustee does not object to the allowance of the Principal Claim as an unsecured, nonpriority claim in the amount of $34,000.

The Claimant, however, also seeks interest on the $34,000, and the Trustee con-

---

**1.** The Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B).

tends that the Interest Claim should be disallowed. In his response to the Objection ("Response") (Doc. 117), the Claimant argues that he is entitled to interest from August 19, 2003, stating that he "agreed to maintain the $34,000 as an unpaid debt obligation until NGP had the means to pay the fee[,]" Resp. at 1, and that interest on the Liquidated Claim should be allowed because he "has been deprived of the use of the $34,000 fee since its due date." *Id.* at 2.

■ Under the Federal Rules of Bankruptcy Procedure, "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr.P. 3001(f). Because the POC was properly executed and filed, the Trustee had "the initial burden of making a colorable challenge" to the POC. *In re Tudor*, 342 B.R. 540, 550 (Bankr. S.D.Ohio 2005). The Trustee met that burden with respect to the Interest Claim by asserting that the "[F]ee [A]greement and the documentation attached to [the POC] provide[ ] no evidence or written documentation to substantiate the amount claimed for interest." Objection at 1. In general, once the objecting party has met the burden of making a colorable challenge to a proof of claim, "the burden of going forward shifts to the creditor, and the creditor bears the ultimate burden of persuasion." *Tudor*, 342 B.R. at 550.

■ Because a "right to payment" constitutes a claim within the meaning of the Bankruptcy Code, 11 U.S.C. § 101(5)(A), "the first step in the claims process is always to determine whether there is a right to payment." *In re Taylor*, 289 B.R.

379, 383 (Bankr.N.D.Ind.2003).[2] The Claimant has not carried his burden of persuading the Court that he has a right to the payment of interest. Although the Claimant states that he "agreed to maintain the $34,000 as an unpaid debt obligation until NGP had the means to pay the fee[,]" Resp. at 1, he does not represent that he had an agreement with NGP for the payment of interest during the deferral period. And nothing in the Fee Agreement itself supports a right to the payment of interest. Further, the Claimant fails to identify any statutory or case law authority under which he would be entitled to interest. Unless the Claimant can point to such authority in support of the payment of interest under the facts of this case, the Interest Claim must be disallowed. *See* 11 U.S.C. § 502(b)(1) (providing that a claim is subject to disallowance if it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured"); *Hann v. Educ. Credit Mgmt. Corp. (In re Hann)*, 476 B.R. 344, 355 (1st Cir. BAP 2012) ("A claim should be rejected and disallowed [ ] when it has no basis in fact or law. . . .") (internal quotation marks omitted).

### Additional Contingency Fee Claim

■ Likewise, the Trustee met his initial burden of making a colorable challenge to the POC with respect to the Additional Contingency Fee by pointing out that the POC "provides no evidence or written document to substantiate any claim for an unknown contingency fee[,]" Objection at 1, and the Claimant has not carried his

---

**2.** The Bankruptcy Code "is usually referring to a right to payment recognized under state law." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 451, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007). A right to payment may give rise to a claim "whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5).

burden of persuading the Court that he has a right to the payment of an additional contingent attorney's fee.

The Claimant argues that "NGP agreed to pay [the Claimant] 1/3 of any damages obtained by NGP's breach of contract claim against TCO for the mis-measurement and under-crediting of NGP's gas" and that he "performed work in developing NGP's breach of contract claim, including the drafting of the complaints attached as Exhibit 1 hereto." Resp. at 2. But the agreement set forth in the Fee Agreement is that the Claimant would represent the Client (including NGP) in the Contingency Fee Cases, and the complaints attached as Exhibit 1 to the Response were not filed, or prepared to be filed, in the Contingency Fee Cases. Rather, one of those complaints was filed in *Nicole Gas Production, Ltd. v. Columbia Gas Transmission Corp.,* Case No. 2:03–cv–01166 (S.D.Ohio) ("S.D.Ohio Case"), and one was prepared to be filed in a case that would have been captioned *Nicole Gas Production, Ltd. v. Columbia Gas Transmission Corp.,* (S.D.W.Va.) ("S.D.W.Va. Case"). *See* Resp. at 2 & Ex. 1. Further, the Claimant himself concedes that the S.D. Ohio Case was voluntarily dismissed before the Debtor's bankruptcy case was commenced and that the S.D. W. Va. Case was never filed:

> I filed NGP's gas mismeasurement case against TCO in federal district court in Columbus. The case was assigned to Judge Frost.
>
> TCO responded by filing a motion for a withdrawal of the reference of the NES bankruptcy. Were this motion successful, the NES gas mismeasurement case might have been put on Judge Frost's docket rather than remanded to Judge Reece in the Court of Common Pleas. This would have resulted in a lengthy delay in the adjudication of NES's gas mismeasurement case and would have removed the case from a judge who was educated as to the merits and whose

rulings had been uniformly favorable. As a result, I voluntarily dismissed the NGP gas mismeasurement case from district court. I subsequently redrafted (and enlarged) the NGP mismeasurement complaint for filing in West Virginia, then TCO's principal place of business, but did not file the complaint there due to the same concerns that it might result in a withdrawal of the reference of the NES bankruptcy and possible trial of the NES mismeasurement case in district court rather than before Judge Reece.

Letter attached to POC at 3. Once again, nothing in the Fee Agreement itself supports the allowance of the Additional Contingency Fee Claim, and the Claimant has failed to identify any statutory or case law authority under which he would be entitled to payment on that claim.

■ Moreover, the Trustee contends—and the Claimant concedes—that any legal services the Claimant provided to NGP were performed before the commencement of the Debtor's bankruptcy case and that the Trustee did not employ the Claimant to represent the interest of the Debtor's estate. *See* Objection at 1; Resp. at 3. Those facts are relevant to the nonpriority status of the Additional Contingency Fee Claim. Although the Claimant does not expressly take the position that this claim is entitled to priority, the Response suggests that he may believe this to be the case. *See* Resp. at 3 ("Regardless of what amount this Court ultimately approves as a compromise of the breach of contract claim, undersigned creditor respectfully submits that *his 1/3 contingency fee agreement should be applied to the compromise* .... Undersigned creditor respectfully submits ... that the compromise would not exist if undersigned creditor had not developed NGP's breach of contract claim against TCO and that *NGP's contingency*

*fee agreement should be honored.*") (emphasis added).[3] If the Claimant's position is that the Additional Contingency Fee Claim is entitled to priority, he has offered no statutory or case law authority in support of that position. Indeed, there are only two circumstances under which this claim conceivably could be entitled to priority status—either the Trustee could have employed the Claimant as counsel for the Debtor's estate pursuant to § 327 (including on a contingent fee basis under § 328(a)), or the Trustee could have assumed the Fee Agreement pursuant to § 365—and neither occurred here.

Section 507(a) of the Bankruptcy Code governs the priority of expenses and claims. The subsection of § 507 that might apply to a contingency fee agreement with a debtor is § 507(a)(2), which provides a priority for "administrative expenses allowed under section 503(b)" of the Bankruptcy Code. And the only subsection of § 503(b) that might apply to a contingency fee claim for representation of a debtor is § 503(b)(2), which provides administrative priority for "compensation and reimbursement awarded under section 330(a) of this title[.]" 11 U.S.C. § 503(b)(2). *See Surrey Inv. Servs., Inc. v. Smith,* 418 B.R. 140, 148 (M.D.N.C.2009) ("The plain language of section 503(b)(2) controls the payment of professional fees.... Where a subsection of section 503(b) directly addresses the type of administrative expense sought, those restrictions cannot be avoided by appealing to the non-exclusive nature of section 503(b)."). As the Trustee notes, he did not retain the Claimant to represent the Debtor's estate. The Claimant, therefore, cannot be entitled to compensation or reimbursement under § 330(a) and does not

have an administrative expense claim under § 503(b)(2). *See In re Milwaukee Engraving Co.,* 219 F.3d 635, 637 (7th Cir. 2000) ("[T]he structure of § 503(b) strongly implies that professionals eligible for compensation must receive it under § 503(b)(2)—which depends on authorization under § 330 or § 1103(a) (and thus on approval under § 327).").  *See also Brill v. Brill Media Co., LLC,* No. 3:10–cv–0100–RLY–WGH, 2011 WL 1113548, at *2 (S.D.Ind. Mar. 24, 2011) ("The Bankruptcy Court correctly concluded that to receive compensation and reimbursement under section 503(b)(2), [the professional] would have to have been employed under section 327(a) of the Bankruptcy Code."). The Claimant's argument that the compromise proposed by the Trustee for the settlement of NGP's claim against TCO "would not exist if undersigned creditor had not developed NGP's breach of contract claim against TCO and that NGP's contingency fee agreement should be honored," Resp. at 3, does not alter the priority of his claim. *See In re Patton,* 358 B.R. 911, 916 (Bankr.S.D.Tex.2007) ("Equity demands that an attorney working on a contingency fee basis be treated the same as other persons holding general unsecured claims. Distributions should be made in accordance with the Code's priority scheme.").

■ The only other way that an attorney might have an administrative expense claim for a contingency fee is if the fee agreement were assumed by the trustee on behalf of the estate. *See In re Richendollar,* No. 04–70774, 2007 WL 1039065, at *6–7 (Bankr.N.D.Ohio Mar. 31, 2007) ("Upon commencement of a Chapter 7 case where the property of the estate includes a ... claim and there is an executo-

---

**3.** The Claimant did not check the box on the POC by which he would have asserted that it was entitled to priority under 11 U.S.C. § 507(a), and the attachment to the POC did not contain any indication that he was asserting anything other than unsecured, nonpriority claims.

ry contingency fee agreement, a trustee has three options if he elects to prosecute the claim: (1) assume the existing executory contract with court approval under § 365(a); (2) negotiate his own contract with existing counsel subject to court approval under § [ ] 327; or (3) engage new counsel with approval of the court under § 327."). To the extent a contingency fee agreement with a debtor is executory on the date the debtor's bankruptcy case is commenced, any claim that the attorney has under the agreement is a prepetition claim if the Chapter 7 trustee fails to assume the agreement. *See Richendollar*, 2007 WL 1039065, at *6–7 ("In this case, Trustee ... neither assumed the Agreement under § 365(a) nor entered into a new contingency fee contract with [the attorney] under § 327.... Under § 365(d)(1) an executory contract that is not assumed or rejected within 60 days after the order for relief is deemed rejected.... The effects of rejection of the Agreement are established by §§ 365(g) and 502(g). Section 365(g) provides that rejection of an executory contract is deemed a breach of that contract occurring immediately prior to the date of filing of the bankruptcy case.").

Here, the Trustee rejected the Fee Agreement. Under § 365(d)(1), if a Chapter 7 trustee "does not assume or reject an executory contract ... of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract or lease is deemed rejected." 11 U.S.C. § 365(d)(1). The order for relief in this case was entered on May 4, 2009. *See* Doc. 16. The Court did not extend the time for the assumption or rejection of executory contracts, and the deadline for the Trustee to assume executory contracts therefore was 60 days after May 4, 2009. That deadline passed without the Trustee moving to assume the Fee Agreement. To the extent the Fee Agreement was an executory contract on the date NGP commenced its bankruptcy case, therefore, the Fee Agreement was deemed rejected pursuant to § 365(d)(1). Accordingly, even if the Claimant had a right to payment on the Additional Contingency Fee Claim, that claim, as well as the Principal Claim, is an unsecured, nonpriority claim.

## Notice of Opportunity for a Hearing

■ Bankruptcy Rule 3007(a) provides that once an objection to a claim is filed a "copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing." And § 502(b) provides that "if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition...." 11 U.S.C. § 502(b). As a district court has stated:

Although both sections would seem to imply that a hearing is required in every situation where an objection has been asserted, section 102(1) of the Bankruptcy Codes notes that

" 'after notice and a hearing', or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act[.]"

Consequently, section 102(1) makes it clear that a hearing is not statutorily

required, but only that parties are given an opportunity for a hearing and may have a hearing if it is so requested. *State Univ. Constr. Fund v. D.A. Elia Constr. Corp. (In re D.A. Elia Constr. Corp.),* No. 99–CV–0546E(H), 2000 WL 1375739, at *4–5 (W.D.N.Y. Sept. 22, 2000) (internal quotation marks omitted).

It is **ORDERED** that the Claimant shall have until November 1, 2013 to file a response to this order and a request for a hearing on the POC and on the grounds for disallowance of the POC set forth in the Objection and this order. If the Claimant timely files a response and a request for a hearing, then the hearing shall be held on December 9, 2013 at 9:30 a.m. in Courtroom A, United States Bankruptcy Court, 170 N. High Street, Columbus, Ohio 43215. If the Claimant does not timely file a response and a request for a hearing, then the Court will enter an order (1) allowing the Principal Claim as an unsecured, nonpriority claim in the amount of $34,000, (2) disallowing the Interest Claim and (3) disallowing the Additional Contingency Fee Claim.

IT IS SO ORDERED.